UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO ZUNIGA, et al., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOME MORTGAGE, <br><br> Defendant <br><br> (In re Dassinger v. Wells Fargo Bank, N.A., et al.) | Civ. No. 14-cv-2973 (KM) <br><br> OPINION |

KEVIN MCNULTY, U.S.D.J.:

I.  Introduction

This action was originally filed *en masse* on behalf of some 87 plaintiffs, against some 40 mortgage lenders and servicers. Through various proceedings not relevant here, many claims and parties were dismissed. The plaintiffs, George W. Dassinger and Isabel Dassinger (the "Dassingers"), were permitted to file an amended complaint stating their own claims. (ECF no. 67) On January 15, 2015, they filed an amended complaint. (ECF no. 76) On March 7, 2016, this Court issued a Memorandum Opinion and an Order granting the defendants' motions to dismiss the amended complaint for failure to state a claim, without prejudice to plaintiffs' submission of a second amended complaint within 30 days. (ECF nos. 121, 122) On April 6, 2016, the Dassingers filed a Second Amended Complaint (referred to herein as the Complaint, and cited as "2AC"). (ECF no. 139) In this, their latest Complaint, the Dassingers allege intentional or negligent misrepresentation, violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2, unjust enrichment, and violations of Title XIV of the Dodd-Frank Act.

1

Now before the Court are two motions under Fed. R. Civ. P. 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim. The first motion was filed by defendants Ocwen Loan Servicing, LLC ("OLS"), Homeward Residential, Inc. ("Homeward"), formerly known as American Home Mortgage Servicing, Inc. ("AHMSI"), and Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2007-1, Asset-Backed Certificates, Series 2007-1("Wells Fargo, as Trustee"). (ECF no. 140) (I will refer to these defendants collectively as the "Mortgage Defendants.") Wells Fargo Bank, National Association ("Wells Fargo"), has also filed a motion to dismiss in its own right. (ECF no. 143)

The Dassingers did not file a timely response in opposition to the motions. However, they later filed a letter opposing defendants' motions, stating that they believed the Second Amended Complaint to be sufficient, and offering an additional argument in response to Wells Fargo's motion to dismiss. (ECF no. 144) I will accept that untimely response from these *pro se* plaintiffs.

## II.     Standard on a Motion to Dismiss

All Defendants have moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

However, a plaintiff alleging fraud or mistake must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). As the Third Circuit has explained, "[a] plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (citation and quotation marks omitted). In other words, a plaintiff may satisfy this requirement by pleading "the date, time and place" of the alleged fraud or deception, or by "otherwise inject[ing] precision or some measure of substantiation" into the allegation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). Additionally, to survive a motion to dismiss, plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Gray v. Bayer Corp.*, No.Civ.A.08–4716, 2010 WL 1375329, at *3 (D.N.J. Mar. 31, 2010) (citing *Lum*, 361 F.3d at 224).

The heightened specificity required by Rule 9(b) extends to the pleading of all claims that "sound in fraud." *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 372 (D.N.J. 2015). This includes the Dassingers' claims alleging intentional misrepresentation, negligent misrepresentation, unjust enrichment, and fraudulent and deceptive practices under the NJCFA. *See Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85, n.3 (3d Cir. 2015) (affirming Rule 9(b) dismissal of claims for intentional misrepresentation, negligent misrepresentation, and unjust enrichment); *Semeran v. Blackberry Corp.*, No. 2:15-CV-00750-SDW-LDW, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (applying Rule 9(b) to NJCFA and negligent misrepresentation claims); *Slimm*, 2013 WL 1867035, at *13 (D.N.J. May 2, 2013) (Rule 9(b) applies to NJCFA claims alleging deceptive conduct in connection with mortgage modifications).

Where a plaintiff, like the Dassingers here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). *Pro se* plaintiffs are also not exempt from meeting the heightened pleading requirements of Rule 9(b) when alleging claims that sound in fraud. *See Kowalsky v. Deutsche Bank Nat'l Trust Co.*, No. 14-07856 (CCC)(JBC), 2015 WL 5770523, at *9 (D.N.J. Sept. 30, 2015).

4

### III. The Second Amended Complaint

For purposes of these motions to dismiss, the allegations of the Complaint are assumed to be true. The Complaint alleges that the Dassingers own a home in Little Falls, NJ; that Wells Fargo as Trustee is the holder of a mortgage on the property; that the loan was previously serviced by AHMSI; and that it is currently serviced by OLS.

On several occasions, AHMSI and OLS collusively transferred the Dassingers' mortgage servicing to subsidiaries, related companies, or successors. AHMSI and OLS filed reports upon each transfer, without the Dassingers' "consultation or approval." Each transfer damaged the Dassingers' credit score. They were also "unnecessary[il]y and excessive[ly]" charged an approximately $900 "transferring fee" per transfer.

AHMSI and OLS were allegedly "unresponsive" or "unreasonably difficult to communicate" with during the Dassingers' years-long attempt to secure a loan modification. They fault AHMSI and OLS for failing to provide them with a loan modification sooner than they did. (The Complaint acknowledges, however, that Plaintiffs did receive a loan modification from OLS in 2014, which "locked in a low interest rate.")

The Dassingers allege that their credit was ruined as a result of the higher interest rate (rising to over 9% adjustable) that applied before the modification. During the period prior to the modification, the Dassingers also were charged certain fees, were denied participation in the Home Affordable Refinance Program (HARP), and endured "economic harassment."

OLS allegedly misrepresented the terms of the loan modification, in particular the Shared Appreciation Loan ("SAM") Waiver, to induce the Dassingers to agree to the modification. The Dassingers were "unaware of certain penalties until it was too late" because "particular details about the SAM Waiver were either not disclosed or [were] withheld." Some of the SAM Waiver's terms (including tax penalties, shared appreciation, and a balloon payment in the event of a sale) have "made it impossible" for them to sell their

house. The Complaint alleges that the SAM Waiver balance of $27,422 had yet to be reduced, contrary to OLS's representation during the loan modification process. However, the Dassingers notified the Court by letter of September 20, 2016 that the balance had been reduced to $9,140.74 in August 2016.

The Complaint alleges that the defendants subjected Plaintiffs to "mortgage manipulation" and misrepresented the fair market value of their Little Falls home. As a result, the Dassingers' home is overvalued by at least $100,000, and their principal balance of $343,669 is inequitable.

As to Wells Fargo, the Complaint alleges failure to credit the Dassingers for certain funds paid to the Dassingers' former attorneys, Berger Law Group ("BLG"). The Dassingers paid BLG some $1,500 from a Wells Fargo account. Later, the Dassingers received notice that the State Attorney Generals of Connecticut and Florida had sued BLG—and the firm had been "shut down"—for unfair and deceptive business practices. Thereafter, the Dassingers sought to have Wells Fargo credit them the $1,500 they had paid BLG, pursuant to Wells Fargo's "100% fraud protection program." Wells Fargo initially credited that amount to the Dassingers' account but then later rescinded the credit, explaining that the payments were not fraudulent.

The Complaint seeks restoration of the $1,500 in attorneys' fees to the Dassingers' Wells Fargo account, $200,000 in damages, a reduction of the mortgage principal, restitution, and additional damages as appropriate under the law.

## IV.   Analysis

Although the Second Amended Complaint does specify several causes of action based in state and federal law—an improvement over the first amended complaint—it does not contain sufficient information to meet the relevant pleading standards in Federal Rules of Civil Procedure 8(a) and 9(b). As described above, claims for intentional and negligent misrepresentation, unjust

enrichment, and fraudulent and deceptive practices under the NJCFA are held to the heightened pleading standards of Rule 9(b).

I start with a general observation. In my prior opinion, I granted leave to file a second amended complaint in which the plaintiffs must "specify which defendants performed which acts." *Zuniga v. Am. Home Mortg.*, No. 14-CV-2973 (KM), 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016); *see also Galicki v. New Jersey*, No. 14-169 (JLL), 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (Rule 8 is not satisfied where a complaint "provide[s] only conclusory allegations against Defendants as a group"); *Triple T Constr., L.L.C. v. Township of W. Milford*, No. 14-2522 (JLL), 2014 WL 2624764, at *4 (D.N.J. June 11, 2014) (Rule 8 is not satisfied where a complaint "lump[ed] all Defendants together, failing to put Defendants on notice of their own alleged wrongdoing"). Defendants assert, and I agree, that the Dassingers' claims (setting aside the allegations specifically directed to Wells Fargo) are directed "generally at the collective Defendants and fail to specify the particular conduct attributable to each defendant." (ECF no. 140 at 10)

The Complaint fails to describe the conduct of each defendant with the necessary specificity in many places. This failure is most pronounced, however, in the "Claims for Relief" section. (2AC at 4) I will discuss the Dassingers' five "claims for relief" one by one.

### 1. Intentional or Negligent Misrepresentation Against Wells Fargo

In their first claim, the Dassingers assert a claim for intentional or negligent misrepresentation against Wells Fargo. (2AC at 4) The theory is that Wells Fargo had a "100% consumer fraud protection plan" under which it obligated itself to pay back a $1,500 attorney's fee that the Dassingers paid from their Wells Fargo account to BLG. The fraud against which the Dassingers claim protection seems to be that of BLG, not Wells Fargo. But the claim, very broadly construed, may be that Wells Fargo misrepresented the particulars of its "100% consumer fraud protection plan."

To state a claim for intentional misrepresentation, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Donnelly v. Option One Mortg. Corp.*, No. CIV.A. 11-7019 ES, 2014 WL 1266209, at *11 (D.N.J. Mar. 26, 2014). "The elements of negligent misrepresentation are the same as those for fraudulent concealment, except that a plaintiff need not allege knowledge of falsity or intent to induce reliance." *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *5 (D.N.J. Feb. 2, 2016).

This claim against Wells Fargo contains no factual allegations specifying the who, what, where, when, and how of any misrepresentations that Wells Fargo allegedly made regarding its consumer fraud protection plan. Nor does the Complaint even really allege that BLG's $1500 charge was fraudulent *vis-à-vis* the Dassingers; it merely alleges generally that the BLG firm was charged with unfair and deceptive business practices. The complaint acknowledges that the Dassingers intentionally paid the attorneys' fees of their own volition; they were not tricked into paying them by Wells Fargo. These allegations clearly fail to meet the heightened pleading standards of Rule 9(b).

### 2. NJCFA and Misrepresentation Claims Regarding Mortgage and Loan Modification Agreements

In their second claim, the Dassingers assert that "Defendants" violated the NJCFA and made intentional and/or negligent representations to the Dassingers in connection with the mortgage and loan modification agreements. (2AC at 4)

The elements of intentional and negligent misrepresentation claims are set out above. Additionally, "[w]here a claim for negligent misrepresentation is based on an omission, such as a failure to disclose a defect, a plaintiff must allege that he had a special relationship with the defendant." *Semeran v.*

*Blackberry Corp.*, 2016 WL 406339, at *5 (D.N.J. Feb. 2, 2016) (citing *Saltiel v. GSI Consultants*, Inc., 170 N.J. 297, 315 (2002)).

To state a claim under the NJCFA, "a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003), *certif. denied*, 178 N.J. 249 (2003) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)). The first element of an NJCFA claim—unlawful conduct—is defined as: "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. § 56:8–2. From this statutory definition, courts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations. *Federico v. Home Depot,* 507 F.3d 188, 202 (3d Cir.2007) (citing *Cox,* 138 N.J. at 17, 647 A.2d 454). This Complaint appears to allege acts under the first and second categories: affirmative acts and knowing omissions.

However, the Dassingers have failed to satisfy Rule 9(b)'s heightened pleading requirement. They generally allege that OLS "misrepresented facts" about the 2014 loan modification, and "did not sufficiently disclose the terms" of the SAM Waiver. (2AC at 3) Once again, they do not describe any specific statements by OLS; they do not state the date, place, or time of any such misrepresentation; they do not identify any person who made such a representation. Most importantly, the Complaint does not even state what "particular details" were "not disclosed," or reveal what "facts" were misrepresented. (*Id.*) In addition, to the extent that the Dassingers may intend to assert a negligent misrepresentation claim based on an omission, they fail to allege a special relationship that would give rise to a duty to disclose.

9

Finally, the Complaint fails to support factually the general and conclusory allegation of "fraudulent and deceptive commercial practices." Although the Dassingers have alleged that AHMSI and OLS made it difficult to obtain a loan modification, they do not explain why that conduct was "unconscionable, deceptive, and fraudulent," nor do they allege facts or law in support of their implied contention that they were entitled to a modification. (*Id.*)

### 3. Unjust Enrichment Claims

In their third claim, the Dassingers allege that "[t]he Defendants have unduly benefited by improperly collecting mortgage payments, fees and charges from us, and have been unjustly enriched." (2AC at 4)

"To state a claim for unjust enrichment, the plaintiff must prove: (1) the defendant received a benefit from the plaintiff; (2) retention of that benefit by the defendant without payment would be unjust; (3) plaintiff expected remuneration from defendant at the time he performed or conferred a benefit on defendant; and (4) the failure of remuneration enriched the defendant beyond its contractual rights." *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (quotations and emendations omitted) (quoting *VRG Corp. v. GKN Realty Co.*, 135 N.J. 539, 554 (1994)).

Here too, the Dassingers fail to satisfy even minimal pleading requirements for an unjust enrichment claim. They do not allege whether they paid the "mortgage payments, fees, [or] charges." They do not state the dates payments were made, or to whom they were paid. They allege no facts that would support a plausible inference that the payments, fees, or charges were not authorized, or that any defendant's retention of those payments was consequentially unjust.

### 4. Inflated Property Valuation Claims

In their fourth claim, the Dassingers allege that the "Defendants' wrongful activities" violated Title XIV of the Dodd-Frank Act and the NJCFA, seemingly in relation to the appraisal of their home's value. (2AC at 4) This

appears to be based on the allegations earlier in the 2AC that "Defendants . . . engaged in mortgage manipulation and . . . misrepresentation" of the property's fair market value, resulting in an inflated valuation and an "inequitable principal balance." (*Id.* at 3) The Dassingers also allege that "[t]he Defendants have engaged in practices resulting in an inflated appraisal of [their] property." (*Id.* at 4)

To begin with, the Dassingers fail to state which defendants engaged in allegedly wrongful conduct. The Complaint provides none of the necessary particulars regarding the "who, what, where, when, and how" of any manipulation, misrepresentation, or other practices leading to an inflated appraisal.

The Complaint also fails to allege an ascertainable loss suffered by the Dassingers or a causal relationship between the (unspecified) defendants' (undescribed) unlawful conduct and an ascertainable loss—both necessary elements of an NJCFA claim. *See N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003).

The court is unable to extract a viable claim under Title XIV of the Dodd-Frank Act from the allegations of this Complaint. The Dassingers offer no response to Mortgage Defendants' argument that courts have not recognized a private right of action for Dodd-Frank Act violations under the circumstances alleged here. (ECF no. 140 at 6-7) (citing *Angino v. Wells Fargo Bank, N.A.*, No. 1:15-CV-418, 2016 WL 787652, at *9 (M.D. Pa. Feb. 19, 2016) (as a general rule, "the Dodd-Frank Act does not provide for a private right of action by borrowers against lending institutions"); *Levine v. Entrust Group, Inc.*, No. C 12 03959 WHA, 2013 WL 1320498, at *7 (N.D. Cal. Apr. 1, 2013) ("Plaintiffs' allegations under the Dodd-Frank Act are meritless because there is no private right of action.").

### 5. Other Misrepresentations

In their fifth and final claim, the Dassingers allege that "Defendants' negligent and/or intentional misrepresentations" caused additional injuries

"including loss of equity in [their] home, damaged credit score, unavailability of credit, and the reduced availability of goods and services attached to credit ratings." (2AC at 5) Earlier in the Complaint, the Dassingers allege that the "process" they underwent while attempting to secure a loan modification from AHMSI and OLS damaged their credit score and resulted in their inability to obtain other loans. (2AC at 4) They also allege that their credit score suffered each time AHMSI and OLS filed reports upon a transfer of the Dassingers' loan to another servicing company. (2AC at 2-3)

However, this Complaint does not contain the specific factual allegations required by Rule 9(b) in describing the content and circumstances of the alleged misrepresentation. Once again, the who, what, when, where, and how is lacking. It is not at all clear what misrepresentation, if any, is even alleged to have been made in connection with either the Dassingers' pursuit of a loan modification or the transfer reports allegedly filed by AHMSI and OLS. Also missing is any substantial detail about the injuries the Dassingers suffered and the connection, if any, between such injury and any misrepresentation by any of the defendants.

## V.   CONCLUSION

For the reasons set forth above, I will grant the defendants' motions to dismiss the Second Amended Complaint. I recognize that these plaintiffs are attempting to negotiate the technicalities of federal practice *pro se*, but this is their second attempt (not counting the original mass complaint), with the benefit of a prior opinion of the Court, to plead a viable cause of action. This dismissal is therefore with prejudice. An appropriate Order follows.

Dated: November 8, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.